## UNITED STATES v. MORRISEY.

(Circuit Court of Appeals, Eighth Circuit.   October 15, 1917.)

No. 4689.

ALIENS ⬥58—OFFENSES AGAINST IMMIGRATION LAW—CONTRACT LABORERS.
Under Immigration Act Feb. 20, 1907, c. 1134, §§ 4–6, 34 Stat. 900 (Comp. St. 1916, §§ 4248, 4250, 4251), making it a misdemeanor to assist or encourage the immigration of any alien by promise of employment through a foreign advertisement, etc., the offense is complete, although an alien, seeking to enter the United States in consequence of such a promise, is denied entry.

Hook, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action by the United States against James E. Morrisey, doing business as the Crookston Iron Works. Judgment for defendant, and the United States brings error. Reversed.

Alfred Jaques, of Duluth, Minn., U. S. Atty.

Martin O'Brien, of Crookston, Minn., for defendant in error.

Before HOOK, SMITH, and CARLAND, Circuit Judges.

SMITH, Circuit Judge.   In the District Court this case was disposed of by a judgment of dismissal of the complaint upon the sustaining of a demurrer thereto.   The sole question is as to the sufficiency of the complaint.   In it, it is charged:

That on or about January 21, 1915, while the defendant was conducting iron works at Crookston, Minn., he did knowingly, wrongfully, and unlawfully assist, solicit, and encourage an alien, Thomas Wilson Young, to migrate to the United States by a promise of employment in the United States through an advertisement caused by defendant to be published in a newspaper published in Winnipeg and circulated in the Dominion of Canada, called the Evening Free Press Bulletin, which advertisement was as follows:

"Wanted—First-class machinist, also a good general iron moulder.   Steady work.   Out of town shop.   Family man.   Box 337 Free Press."

That said advertisement was published at defendant's request; that at the time of its publication many iron molders were out of employment in the United States and could easily have been employed by the defendant; that said advertisement came to the attention of Thomas Wilson Young, an iron molder, who opened a correspondence with the defendant which resulted in a contract between said Young and the defendant.   The complaint continues:

"That thereafter said alien, Thomas Wilson Young, in consequence of such advertisement caused to be published by the defendant in the Evening Free Press Bulletin, and in consequence of the letters above specified, written to

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

said alien, Thomas Wilson Young, on the 27th day of February, A. D. 1915, started from his home in Weston, Manitoba, Dominion of Canada, to Crookston, in the United States of America. That on his way to Crookston, in the United States, to wit, at Winnipeg, in the Dominion of Canada, said alien, Thomas Wilson Young, was intercepted by the immigration authorities of the United States, taken before a board of special inquiry of inspectors in said Winnipeg, at a meeting held Saturday, February 27, 1915, and was by such board of inquiry refused admission to the United States as one coming to the United States in violation of the immigration laws of the United States, and as a contract laborer within the meaning of such laws."  •

Plaintiff asked judgment for the sum of $1,000. The demurrer was filed on the ground that said complaint failed to state facts sufficient to constitute a cause of action. The action was brought under the act of the Fifty-Ninth Congress of February 20, 1907, entitled "An act to regulate the immigration of aliens into the United States." 34 Stats. 898, 900, c. 1134. This law provides:

"Sec. 4. That it shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States, unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section 2 of this act.

"Sec. 5. That for every violation of any of the provisions of section 4 of this act the persons, partnership, company, or corporation violating the same, by knowingly assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States, or by any person who shall first bring his action therefor in his own name and for his own benefit, including any such alien thus promised labor or service of any kind as aforesaid, as debts of like amount are now recovered in the courts of the United States; and separate suits may be brought for each alien thus promised labor or service of any kind as aforesaid. And it shall be the duty of the district attorney of the proper district to prosecute every such suit when brought by the United States.

"Sec. 6. That it shall be unlawful and be deemed a violation of section 4 of this act to assist or encourage the importation or migration of any alien by promise of employment through advertisements printed and published in any foreign country; and any alien coming to this country in consequence of such an advertisement shall be treated as coming under promise or agreement as contemplated in section 2 of this act, and the penalties imposed by section 5 of this act shall be applicable to such a case: Provided, that this section shall not apply to states or territories, the District of Columbia, or places subject to the jurisdiction of the United States, advertising the inducements they offer for immigration thereto, respectively."

The sole question argued is as to the effect of the stopping of the contemplated immigrant before he reached the United States. It is substantially conceded that, if he had ever reached the United States under the allegations of the complaint, the defendant would have been liable.

The defendant chiefly relies upon United States v. Craig (C. C.) 28 Fed. 795. That opinion was delivered by Judge Brown, afterwards one of the Justices of the Supreme Court of the United States. The opinion is learned and able, as one would expect any opinion to be from its author. It is announced in that case that under the act of February 26, 1885 (23 Stat. 332, c. 164), the offense described in the act

was not completed until the alien had entered the territory of the United States. We do not deem it necessary to discuss the question raised as to whether that was dictum or not.

The defendant also relies upon United States v. Borneman (D. C.) 41 Fed. 751. That opinion was by Green, District Judge, and does not substantially discuss the question, but announces the same rule under the same statute. The defendant also cites United States v. Michigan Cent. R. Co. (C. C.) 48 Fed. 365, but we confess we cannot see its application.

None of the cases cited were under the same act as this one. The act of 1885 (23 Stat. 332) was entitled:

"An act to prohibit the importation and migration of foreigners and aliens under contract or agreement to perform labor in the United States, its territories, and the District of Columbia."

This title necessarily implied that the immigrant must arrive in the United States and it has been said that:

"The title of an act cannot control its words, but may furnish some aid in showing what was in the mind of the Legislature." Holy Trinity Church v. United States, 143 U. S. 457, 462, 12 Sup. Ct. 511, 513 (36 L. Ed. 226).

The first section of that act provides that it shall be unlawful for any person to prepay the transportation of any alien under contract or agreement made previous to the importation or migration of such alien to perform labor. Section 2 (Comp. St. 1916, § 4245) provides that all contracts or agreements which may hereafter be made to perform labor or services by any person in the United States previous to the migration or importation of the person or persons shall be utterly void. Section 3 provides that for every violation of the provisions of section 1 the person violating the same by knowingly assisting, encouraging, or soliciting the immigration of any alien into the United States shall forfeit and pay, etc. This section refers to the first section, which in turn refers to contracts "made previous to the importation or migration of such alien."

The act under which this proceeding is brought carries with it none of the inferences to be drawn from the title of the act of 1885. The law in question is entitled "An act to regulate the immigration of aliens into the United States," and the language of this statute does not closely follow the language of the old.

The identical question here involved was presented in United States v. New York Central & H. R. R. Co. (in the District Court of the Northern District of New York in 1916) 232 Fed. 179. Judge Ray, long chairman of the judiciary committee of the House of Representatives, delivered the opinion, and he held that under the act of 1907, where the defendant solicited the importation of a contract laborer, he was guilty under the statute. His opinion was affirmed by the Circuit Court of Appeals of the Second Circuit in New York Central & H. R. R. Co. v. United States, 239 Fed. 130, 152 C. C. A. 172.

The question thus presented is of vital importance to the defendant, but not to others, for by an act to regulate the immigration of aliens to,

and the residence of aliens in, the United States, passed February 5, 1917 (39 Stat. 874, c. 29), the law is expressly made applicable to every "attempt to induce, assist, encourage, or solicit the importation or migration of any contract laborer or contract laborers into the United States."

After the most careful consideration we are constrained to follow the opinion of the Circuit Court of Appeals in the Second Circuit and hold that the fact that the defendant's misconduct was discovered before the contract laborer reached the United States and the government prevented his coming here did not make the defendant guiltless under the act of 1907.

The judgment of the District Court is reversed, and the cause remanded, with directions to set aside the order sustaining the demurrer to the complaint and overrule the same, and give the defendant an opportunity to answer if he should be so advised.

HOOK, Circuit Judge (dissenting). I think that under the Contract Labor Law of February 20, 1907 (34 Stat. 900), mere solicitation, without the entry of the alien into the United States, was not an offense. The act of February 5, 1917, subsequent to the offense charged, penalized solicitation without entry for the first time.